**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JAN O'HARA, | : | Civil No. 3:23-CV-00671 |
| | : | |
| Plaintiff | : | (Magistrate Judge Carlson) |
| | : | |
| v. | : | |
| | : | |
| LELAND DUDEK, | : | |
| Acting Commissioner of Social Security,[1] | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM OPINION**

## I.    Introduction

It is well-settled that "[i]n making a residual functional capacity determination, the ALJ must consider all evidence before him." Moreover, case law has long placed a duty of articulation upon Administrative Law Judges (ALJs) when deciding Social Security disability claims. Thus, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must

---

[1] Leland Dudek became the Acting Commissioner of Social Security on February 16, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Leland Dudek should be substituted for the previously named defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence.  Id. at 706-707.  In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Comm'r of Soc. Sec., 181 F. 3d 429, 433 (3d Cir. 1999). When a conflict in the evidence exists, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason." Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir. 1993).

We are reminded of these familiar paradigms in the instant case involving the plaintiff, Jan O'Hara, who suffered from an array of mental and physical impairments, but whom the ALJ found was capable of performing light work with certain limitations. The ALJ accounted for O'Hara's severe mental impairments, including major depressive disorder, anxiety disorder, social anxiety disorder, and panic disorder, by limiting her to work involving simple, routine tasks, but not at a production rate/pace, no more than simple work-related decisions, no more than occasional changes in the work setting, and only occasional interaction with supervisors, co-workers, and the public. The ALJ based this residual functional capacity (RFC) assessment upon his conclusion at Step 2 of the sequential analysis that governs Social Security appeals that O'Hara had mild to moderate impairments in all areas of mental functioning. This assessment was supported by the opinions of

2

the State agency consultative psychologists. However, notably lacking from the ALJ's analysis was an evaluation of the opinion of clinical psychologist Dr. Matthew Emery, who, in June 2018 completed a thorough clinical psychological evaluation and accompanying recommendations regarding O'Hara's mental functioning.

The Commissioner takes the view that the ALJ was not required to evaluate the opinion of Dr. Emery because it is not a medical opinion under the new regulations. However, in our view, the opinions expressed by Dr. Emery do relate to O'Hara's ability to perform work-related activities; among other statements, Dr. Emery opined that O'Hara would benefit from working on a part-time basis, that should would need additional "personal time out" when feeling overwhelmed with activity, would need extra time to complete tasks, would need time off for therapy and medical appointments, and would require a modified task schedule requiring the most sustained mental effort at the beginning of her shift. (Tr. 628). These limitations directly correlate to functional limitations which are not addressed by the ALJ in the RFC, but which could limit O'Hara's ability to sustain competitive employment, including off-task time and absences from work. These limitations are also consistent with the opinion of O'Hara's treating physician's assistant, who opined that she would be off-task throughout the workday, would be absent from work one to two times per month, and would be unable to sustain full-time competitive work

3

on a sustained basis due to the symptomatology of her mental and physical conditions.

Thus, without any explanation by the ALJ regarding the reasons why he failed to consider or assign persuasive value to the findings of Dr. Emery, at base, the Commissioner's arguments regarding the substance and timeliness of Dr. Emery's opinion are simply post-hoc rationalizations, "not apparent from the ALJ's decision itself" which would be improper for the Court to adopt. Neff v. Colvin, No. 3:14-CV-2278, 2015 WL 4878720, at *14 (M.D. Pa. Aug. 14, 2015) (quoting Haga v. Astrue, 482 F.3d 1205, 1207-08 (3d Cir. 2007)). Since the ALJ failed to adequately articulate his reasons for failing to address, analyze or even fully acknowledge the opinion of Dr. Emery, we will remand this case for further consideration and evaluation of the medical opinion evidence.

## II. Statement of Facts and of the Case

This is the plaintiff, Jan O'Hara's second application for Social Security benefits. She previously applied for a period of disability and disability insurance benefits along with an application for supplemental security income pursuant to Titles II and XVI of the Social Security Act in July of 2018 and an ALJ denied her applications on June 19, 2019. (Tr. 62-81). O'Hara then filed applications for disability and supplemental security income in August of 2019, alleging an onset

date the day after the previous ALJ's denial, June 20, 2019. (Tr. 13). According to O'Hara she had become disabled due to the combined effects of the following impairments: COPD, diabetes, major depressive disorder, anxiety, hypothyroidism, sciatica, panic disorder, hypertension, hypoglycemia, and somatic symptom disorder. (Tr. 83). O'Hara was born on September 2nd, 1967, and was fifty-one years old, which under the Commissioner's regulations made her an individual closely approaching advanced age, on the amended alleged disability onset date. (Tr. 25).

O'Hara's disability application was supported by over 800 pages of clinical records, (Tr. 615-1448), along with the medical opinions of her treating provider, PA-C Austin Benner, and four State agency medical consultants – two who opined on O'Hara's physical RFC[2] and two who opined on her mental RFC.

The record also contains a clinical psychological evaluation conducted by treating clinical psychologist Dr. Emery, whose treating records the ALJ acknowledged in formulating the RFC, stating, "Emery Behavioral Health Services providers documented the claimant's history of mental health issues, including anxiety, depression, and personality disorder, prior to the alleged onset date," (Tr.

---

[2] Although the plaintiff also raises issues regarding the physical RFC assessment, since we remand this case based upon the evaluation of the opinion evidence with regard to O'Hara's mental impairments, we do not address the opinion evidence regarding her physical RFC.

23-24), but whose recommendations regarding the limiting effects of O'Hara's mental impairments, found in the same exhibit cited by the ALJ, were not acknowledged or evaluated with the other medical opinion evidence. On June 13, 2018, prior to the alleged onset date, Dr. Emery opined that O'Hara be placed in low-stress, "hands on" occupations that are orderly and routine in nature, that she initially work on a part-time basis, gradually increasing her hours as she is able, that she be permitted to take personal time out and provided a quiet place to go when feeling overwhelmed, that she be provided extra time to complete tasks and time off for therapy and medical appointments and be allowed to make up missed time from work and that her schedule be adjusted to allow for the most sustained mental effort at the beginning of the shift. (Tr. 627-28).

The opinion of O'Hara's treating provider, Dr. Benner, echoed Dr. Emery's opinion with regard to O'Hara requiring additional off-task time. PA-C Benner opined on that O'Hara's anxiety and depression would often moderately interfere with her ability to attend to tasks or concentrate and deal with work stress. (Tr. 1434). PA-C Benner also opined that O'Hara would be off-task throughout the workday for thirty minutes per event and absent from work one to two times per month. (Tr. 1442). In PA-C Benner's opinion, O'Hara would be unable to sustain full-time

competitive work on a sustained basis due to the symptomatology of her mental and physical conditions. (Id.)

Conversely, state agency psychological consultants Drs. Cloutier and Taren opined that O'Hara suffered from mild to moderate limitations in her mental functioning, but could complete one-to-two-step tasks and could meet the basic mental demands of simple, routine tasks on a sustained basis. (Tr. 92-94; 131-35).

Thus, the record reveals that, although the State agency psychological consultants found O'Hara's mental impairments would not preclude her from competitive work, the opinions of O'Hara's treating provider PA-C Benner, and that of examining clinical psychologist Dr. Emery, were consistent in their view that O'Hara's mental impairments would cause her to be off-task and absent from work more than the tolerable limits for competitive employment.

It was against this clinical backdrop that an ALJ conducted a hearing regarding O'Hara's disability application on July 19, 2021, at which O'Hara and a vocational expert testified. (Tr. 36-61). Following this hearing, on September 1, 2021, the ALJ issued a decision denying O'Hara's application for benefits. (Tr. 10-34). In that decision, the ALJ first concluded that O'Hara met the insured status requirements of the Social Security Act through June 30, 2023, and had not engaged in substantial gainful activity since June 20, 2019, the alleged onset date. (Tr. 16).

At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found that O'Hara suffered from the following severe impairments: chronic obstructive pulmonary disease (COPD), diabetes mellitus, essential hypertension, hypothyroidism, degenerative disc disease, a synovial cyst of the lumbar vertebrae, radiculopathy, carpal tunnel syndrome, major depressive disorder, unspecified anxiety disorder, social anxiety disorder, panic disorder, and cluster B traits. (Id.) At Step 3 the ALJ determined that O'Hara did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments, concluding that she had only mild to moderate limitations in the "paragraph B" criteria of mental functioning. (Id.)

The ALJ then fashioned the following RFC for the plaintiff:

After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant: could occasionally climb ramps and stairs, but never ladders, ropes, and scaffolds; could frequently balance, kneel, and crawl, but only occasionally stoop and crouch; must avoid concentrated exposure to extreme cold, humidity, vibrations, fumes, odors, dusts, gases, poor ventilation, other pulmonary irritants and hazards; is limited to work involving only simple routine tasks, but not at a production rate/pace; is limited to no more than simple work-related decisions; could tolerate no more than occasional changes in the work setting; and is limited to occasional interaction with supervisors, co-workers, and the public.

(Tr. 22).

8

In reaching this conclusion, the ALJ largely adopted the opinions of the State agency psychological consultants, Drs. Cloutier and Taren, finding that these opinions were persuasive because the psychological evidence of record, including mental examination findings, supported a finding that O'Hara was able to complete a range of simple work suggested by these experts. (Tr. 26). The ALJ addressed the opinion of PA-C Benner to the extent that he opined upon her physical RFC, finding his opinion only somewhat persuasive overall, but also acknowledging that PA-C Benner opined she would be off task throughout the workday and absent from work one to two times per month. (Tr. 25). Conspicuously missing from the ALJ's analysis is any mention of the opinion of clinical psychologist Dr. Emery, whose opinion also indicated O'Hara's mental impairments would cause her to be off-task and absent from work and that she would only be able to initially work on a part-time basis.

This appeal followed. (Doc. 1). On appeal, among other issues, O'Hara argues that the ALJ committed reversible error in failing to determine the persuasiveness of the opinion of Dr. Emery. Since we find that the ALJ failed to address or assign persuasive value to this opinion, which he addressed as part of the record, and at least some of the limitations opined by Dr. Emery could have affected the ultimate outcome of this case, we agree that the ALJ's responsibility of adequately articulating the basis for a medical opinion evaluation has not been met in this this

9

case. Therefore, we will remand this case for further consideration and evaluation of the medical opinion evidence.

## III.  <u>Discussion</u>

### A.    <u>Substantial Evidence Review – the Role of this Court</u>

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.  See 42 U.S.C. §405(g); <u>Johnson v. Comm'r of Soc. Sec.</u>, 529 F.3d 198, 200 (3d Cir. 2008); <u>Ficca v. Astrue</u>, 901 F. Supp.2d 533, 536 (M.D.Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Pierce v. Underwood</u>, 487 U.S. 552, 565 (1988).  Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971).  A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence.  <u>Mason v. Shalala</u>, 994 F.2d 1058, 1064 (3d Cir. 1993).  But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision]

from being supported by substantial evidence." <u>Consolo v. Fed. Maritime Comm'n</u>, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." <u>Leslie v. Barnhart</u>, 304 F. Supp.2d 623, 627 (M.D.Pa. 2003).

The Supreme Court has underscored for us the limited scope of our review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. <u>T-Mobile South, LLC v. Roswell</u>, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." <u>Ibid.</u>; <u>see, e.g., Perales</u>, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Consolidated Edison</u>, 305 U.S. at 229, 59 S.Ct. 206. <u>See Dickinson v. Zurko</u>, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

<u>Biestek</u>, 139 S. Ct. at1154.

The question before this Court, therefore, is not whether the claimant is disabled, but rather whether the Commissioner's finding that she is not disabled is

supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D.Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); Burton v. Schweiker, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); Ficca, 901 F. Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

Several fundamental legal propositions which flow from this deferential standard of review. First, when conducting this review "we are mindful that we must not substitute our own judgment for that of the fact finder." Zirnsak v. Colvin, 777 F.3d 607, 611 (3d Cir. 2014) (citing Rutherford, 399 F.3d at 552). Thus, we are enjoined to refrain from trying to re-weigh the evidence. Rather our task is to simply determine whether substantial evidence supported the ALJ's findings. However, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review. Simply put, "this Court requires the ALJ to set forth the reasons for his decision." Burnett v. Comm'r of Soc.

Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000). As the Court of Appeals has noted on this score:

> In Burnett, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable meaningful judicial review. Id. at 120; see Jones v. Barnhart, 364 F.3d 501, 505 & n. 3 (3d Cir.2004). The ALJ, of course, need not employ particular "magic" words: "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." Jones, 364 F.3d at 505.

Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice ours is a twofold task. We must evaluate the substance of the ALJ's decision under a deferential standard of review, but we must also give that decision careful scrutiny to ensure that the rationale for the ALJ's actions is sufficiently articulated to permit meaningful judicial review.

## B.     Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); see also 20 C.F.R. §§404.1505(a), 416.905(a).   To satisfy this

13

requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §§404.1520(a), 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's residual functional capacity (RFC). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett v. Comm'r

14

of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).

Once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002); see also Metzger v. Berryhill, No. 3:16-CV-1929, 2017 WL 1483328, at *5 (M.D. Pa. Mar. 29, 2017), report and recommendation adopted sub nom. Metzgar v. Colvin, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017); Rathbun v. Berryhill, No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D. Pa. Mar. 12, 2018), report and recommendation adopted, No. 3:17-CV-301, 2018 WL 1479366 (M.D. Pa. Mar. 27, 2018).

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. Mason, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show that jobs exist in significant number in the national economy that the claimant could

perform that are consistent with the claimant's age, education, work experience and RFC.  20 C.F.R. §§404.1512(f), 416.912(f); Mason, 994 F.2d at 1064.

There is an undeniable medical aspect to an RFC determination, since that determination entails an assessment of what work the claimant can do given the physical limitations that the claimant experiences. Yet, when considering the role and necessity of medical opinion evidence in making this determination, courts have followed several different paths. Some courts emphasize the importance of medical opinion support for an RFC determination and state that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant." Biller, 962 F.Supp.2d at 778–79 (quoting Gormont v. Astrue, Civ. No. 11–2145, 2013 WL 791455 at *7 (M.D. Pa. Mar. 4, 2013)). In other instances, it has been held that "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006). Further, courts have held in cases where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." Cummings v. Colvin, 129 F.Supp.3d 209, 214–15 (W.D. Pa. 2015).

16

These seemingly discordant legal propositions can be reconciled by evaluation of the factual context of these decisions. Those cases which emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting, like that presented here, where well-supported medical sources have opined regarding limitations which would support a disability claim, but an ALJ has rejected the medical opinion which supported a disability determination based upon a lay assessment of other evidence. Biller, 962 F.Supp.2d at 778–79. In this setting, these cases simply restate the commonplace idea that medical opinions are entitled to careful consideration when making a disability determination, particularly when those opinions support a finding of disability. In contrast, when no medical opinion supports a disability finding or when an ALJ is relying upon other evidence, such as contrasting clinical or opinion evidence or testimony regarding the claimant's activities of daily living, to fashion an RFC courts have adopted a more pragmatic view and have sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. See Titterington, 174 F. App'x 6; Cummings, 129 F.Supp.3d at 214–15. In either event, once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported

17

by substantial evidence. <u>Burns v. Barnhart</u>, 312 F.3d 113; <u>see also</u> <u>Metzger v. Berryhill</u>, 2017 WL 1483328, at *5; <u>Rathbun v. Berryhill</u>, 2018 WL 1514383, at *6.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." <u>Cotter v. Harris</u>, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. <u>Id</u>. at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." <u>Schaudeck v. Comm'r of Soc. Sec.</u>, 181 F. 3d 429, 433 (3d Cir. 1999).

### C.    <u>Legal Benchmarks for the ALJ's Assessment of Medical Opinions</u>

O'Hara filed his disability application following a paradigm shift in the manner in which medical opinions were evaluated when assessing Social Security claims. Prior to March 2017, ALJs were required to follow regulations that defined medical opinions narrowly and created a hierarchy of medical source opinions with

treating sources at the apex of this hierarchy. However, in March of 2017, the Commissioner's regulations governing medical opinions changed in a number of fundamental ways. The range of opinions that ALJs were enjoined to consider were broadened substantially, and the approach to evaluating opinions was changed from a hierarchical form of review to a more holistic analysis. As one court has aptly observed:

> The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017, and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded. According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." Revisions to Rules Regarding the Evaluation of Medical Evidence ("Revisions to Rules"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867–68 (Jan. 18, 2017), see 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors." 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).
>
> Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." Id. at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1). The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that formed the foundation of the treating source rule. Revisions to Rules, 82 Fed. Reg. 5844-01 at 5853.

19

An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c (b)(2), 416.920c(b)(2). With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." Id. at §§ 404.1520c(c)(1), 416.920c(c)(1). The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." Id. at §§ 404.1520c(c)(2), 416.920c(c)(2).

Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion. Id. at §§ 404.1520c(b)(2), 416.920c(b)(2). However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5). Id. at §§ 404.1520c(b)(3), 416.920c(b)(3).

Andrew G. v. Comm'r of Soc. Sec., No. 3:19-CV-0942 (ML), 2020 WL 5848776, at

*5 (N.D.N.Y. Oct. 1, 2020).

Oftentimes, as in this case, an ALJ must evaluate various medical opinions.

Judicial review of this aspect of ALJ decision-making is still guided by several

settled legal tenets. First, when presented with a disputed factual record, it is well

established that "[t]he ALJ – not treating or examining physicians or State agency

consultants – must make the ultimate disability and RFC determinations." Chandler

v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011). Thus, when evaluating

medical opinions " the ALJ may choose whom to credit but 'cannot reject evidence

for no reason or for the wrong reason.'" Morales v. Apfel, 225 F.3d 310, 317 (3d

Cir. 2000) (quoting Mason, 994 F.2d at 1066). Therefore, provided that the decision

is accompanied by an adequate, articulated rationale, it is the province and the duty

of the ALJ to choose which medical opinions and evidence deserve greater weight.

Further, in making this assessment of medical evidence:

> An ALJ is [also] entitled generally to credit parts of an opinion without
> crediting the entire opinion. See Thackara v. Colvin, No. 1:14–CV–
> 00158–GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015);
> Turner v. Colvin, 964 F. Supp. 2d 21, 29 (D.D.C. 2013) (agreeing that
> "SSR 96–2p does not prohibit the ALJ from crediting some parts of a
> treating source's opinion and rejecting other portions"); Connors v.
> Astrue, No. 10–CV–197–PB, 2011 WL 2359055, at *9 (D.N.H. June
> 10, 2011). It follows that an ALJ can give partial credit to all medical
> opinions and can formulate an RFC based on different parts from the
> different medical opinions. See e.g., Thackara v. Colvin, No. 1:14–CV–
> 00158–GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015).

Durden v. Colvin, 191 F.Supp.3d 429, 455 (M.D. Pa. 2016).

Finally, with respect to assessing competing medical opinion evidence, it is

clear beyond peradventure that:

> When a conflict in the evidence exists, the ALJ may choose whom to
> credit but "cannot reject evidence for no reason or for the wrong
> reason." Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir.1993). The
> ALJ must consider all the evidence and give some reason for

discounting the evidence she rejects. <u>See Stewart v. Secretary of H.E.W.</u>, 714 F.2d 287, 290 (3d Cir.1983).

<u>Plummer v. Apfel</u>, 186 F.3d 422, 429 (3d Cir. 1999).

It is against these legal benchmarks that we assess the instant appeal.

### D.    **This Case Should Be Remanded for Consideration of the Medical Opinion of Dr. Emery.**

Simply put, the ALJ's failure to address the opinion of Dr. Emery was error. As we have noted in the past "the ALJ's complete failure to analyze, address or even acknowledge [a] treating source opinion which conflicted with the ALJ's residual functional capacity analysis, and recommended [a claimant] for 'full disability,' compels a remand . . . ." <u>Harrison v. Berryhill</u>, No. 3:17-CV-618, 2018 WL 2051691, at *5 (M.D. Pa. Apr. 17, 2018), <u>report and recommendation adopted,</u> No. 3:17CV0618, 2018 WL 2049924 (M.D. Pa. May 2, 2018). <u>See e.g.</u>, <u>Saltos v. O'Malley</u>, No. 3:24-CV-006, 2024 WL 3794679, at *10 (M.D. Pa. Aug. 13, 2024); <u>Seibert v. Saul</u>, No. 1:18-CV-10, 2019 WL 4439653, at *7 (M.D. Pa. Aug. 28, 2019), <u>report and recommendation adopted,</u> No. 1:18-CV-10, 2019 WL 4420578 (M.D. Pa. Sept. 16, 2019). We acknowledge Dr. Emery's opinion did not fully conflict with the RFC assessment of the ALJ; the ALJ did account for mild and moderate limitations in mental functioning by limiting plaintiff to simple routine tasks,  simple work-related decisions, occasional changes in work setting and occasional

interaction with supervisors, coworkers, and the public. However, while the RFC accounted for a number of limitations that are indicated in this opinion, it does not address absenteeism or off-task time, limitations that both Dr. Emery and treating source PA-C Benner opined would preclude O'Hara from consistent, full-time employment and which the vocational expert testified would not be acceptable in maintaining employment. (Tr. 59). Moreover, when we consider the consistency of the medical opinions—one of the key factors which must now be assessed under the revised medical opinion regulations—it is evident that both treating sources who examined O'Hara found she would have limitations in her off-task time and absenteeism, a factor which the ALJ simply did not address given the complete omission of Dr. Emery's opinion from the analysis. And the error in failing to address this opinion was not harmless, where a vocational expert testified at O'Hara's hearing that any more than fifteen percent off-task time would not be acceptable in maintaining employment. (Tr. 59).

The Commissioner argues that the ALJ was not required to consider the opinion of Dr. Emery because it is not a medical opinion under the new regulations since "Dr. Emery did not provide a statement about what Plaintiff could still do despite her impairments or whether she was limited to any specific work-related abilities." (Doc. 13, at 9). We disagree. As this Court has noted, "the revised Social

23

Security regulations define a medical opinion as having two components: (1) what the plaintiff can still do despite his impairments; and (2) whether he has one or more impairment-related limitations in his ability to perform mental demands of work activities." Burrow v. Kijakazi, No. CV 1:21-342, 2022 WL 17416490, at *2 (M.D. Pa. Dec. 5, 2022) (citing 20 C.F.R. § 404.1513(a)(2)(ii)). In our view, the opinion of Dr. Emery, which includes a thorough evaluation, summary, and recommendations specifically addressing O'Hara's ability to perform work-related activity, including her ability to work part-time in low stress, "hands on" occupations that are orderly and routine in nature, directly addresses what she can still do despite her impairments. Moreover, the functional limitations recommended by Dr. Emery, including additional time to complete tasks, time off for therapy, and personal time out when feeling overwhelmed, address her impairment-related limitations in her ability to perform the mental demands of work activities. "Thus, the ALJ's rejection of this decision without explaining how he considered its supportability and consistency and evaluating its persuasiveness was clear error." Hammond v. Dudek, No. 3:23-CV-00998, 2025 WL 642101, at *13 (M.D. Pa. Feb. 27, 2025) (citing Fuller v. Kajikazi, No. EP22CV00133FMMAT, 2023 WL 5807867, at *4 (W.D. Tex. Aug. 22, 2023), report and recommendation adopted, No. EP22CV00133FMMAT, 2023 WL 5811852 (W.D. Tex. Sept. 7, 2023)

("[S]tatements about how specific impairments affect work-related abilities, which inform the Commissioner's ultimate legal conclusions, must be addressed").

To the extent that the Commissioner offers, in passing, that the ALJ ignored the opinion of Dr. Emery because it was issued one year prior to the alleged onset date, in the absence of a clearly articulated rationale in the ALJ's decision for rejecting medical opinion evidence, neither the Court, nor the Commissioner, may engage in this type of speculative, post-hoc rationalization for an ALJ's assessment. Neff v. Colvin, 2015 WL 4878720, at *14. On the contrary, it was the duty and province of the ALJ to provide "a clear and satisfactory explication" for the rejection of medical evidence. Cotter, 642 F.2d at 704. Absent such clearly articulated rationale, the Court is left to assume that the ALJ erroneously ignored this evince, "for no reason at all." Mason, 994 F.2d at 1066.

In sum, under the regulations governing evaluation of medical opinion evidence, more is needed by way of explanation in this case. Since the ALJ's burden of articulation is not met in the instant case, this matter must be remanded for further consideration by the Commissioner. Yet, while we reach this result, we note that nothing in this Memorandum Opinion should be deemed as expressing a judgment

on what the ultimate outcome of any reassessment of this evidence should be. Rather, the task should remain the duty and province of the ALJ on remand.[3]

## IV.  **Conclusion**

Accordingly, for the foregoing reasons, IT IS ORDERED that the plaintiff's request for a new administrative hearing is GRANTED, the final decision of the Commissioner denying these claims is vacated, and this case is remanded to the Commissioner to conduct a new administrative hearing.

An appropriate order follows.

/s/ *Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

DATED: March 19, 2025

---

[3] Further, since we have determined remand is necessary based upon this single issue, we do not address the plaintiff's remaining arguments, but rather leave their determination for resolution on remand.

26